FEDERATION OF THE SWISS WATCH INDUSTRY 2012-13-85 Mr. Cruz, when you are ready. Good morning, Your Honor. May you please take the floor. My name is Amory Cruz and I represent Swiss Watch International. The appellant in this case, my co-counsel Henry Rodriguez, will be taking up the bulk of the time and address the main issues in this case. I will take just a couple of minutes to introduce the story and would like to have five minutes for rebuttal. You just want three minutes? Yes, Your Honor. All right. And you want to tell us the story? Yes, correct. I'll tell you the story about this case. The story is good at the Court of Appeals level. Let's continue. Yes. The story I'm referring to is the proverbial story of the goose and the gander. Something that we touched upon in our initial brief. Our clients are the goose and the Federation is the gander. The point that I would like to make is encapsulated in the popular expression that what is good for the goose should be good for the gander. Why do I say that? The incident case has its origins in an application to register the marked Swiss legend for watches. The PTO refused registration of that designation partly because of the registration on the principal register of the certification marks at issue in this case. Cruz, let me ask you a question or we may be discussing a cooked goose in this case. Okay. Explain to me how the certification requirements of the Federation affect or impact U.S. marking requirements. Your Honor, the U.S. marking requirements is something that we have addressed extensively in our brief. They affect the marking requirements because they differ from the marking requirements. The Federation has imposed a number of requirements on the certification holders that conflict with the marking requirements. How? How do they conflict? They impose additional requirements which in effect discriminate against American producers. But if you wouldn't mind, Your Honors, I would like to have Mr. Rodriguez who is really smart as I am and who is more embedded in this aspect of the case to address that issue. I just wanted to bring up this point to you as a background information to put the case in context and to point out that there is an inconsistency in this case that Your Honors need to resolve. And that inconsistency refers to the fact that, as I was trying to explain, the application to register the mark Swiss Legend was denied registration partly because of the certification marks at issue in this case. Now, following that decision, our client petitioned to cancel the registration of the APALEE marks. And we argued among other things that the APALEE Federation has engaged in permissive use of its marks which could result in their cancellation pursuant to section 14.5. Cruz, you just wanted three minutes for opening remarks and then you wanted to yield to Mr. Rodriguez for the substance? Yes, Your Honor. Well, you've consumed your three minutes. Do you want to yield to Mr. Rodriguez now? Did I give him three minutes already? I'm sorry. That's what it says right in front of you. That's what the red light indicates. Well, very well, Your Honor. Then I yield to Mr. Rodriguez. All right. And I understand five minutes are being reserved for rebuttal. Yes. Is that rebuttal by Mr. Martin Rodriguez or you? I'm sorry? Mr. Rodriguez, yes. All right. So we'll hear from Mr. Rodriguez who has 12 minutes including his principal argument and rebuttal. May it please the Court. Counsel. The core issue before this Court is whether the Board at trial used the proper test to determine whether a violation of section 14.5c has occurred. Now, the Board used a simple eyeball test in comparing the literal elements of the certification mark with those of the third-party Swiss formative marks. This simplistic analysis doesn't follow precedent and is not enough to legally conclude that the marks are identical or substantially identical. Jurisprudence shows that the comparison of the literal elements is not enough. A more nuanced analysis is required that includes factors much like one might use the DuPont factors in the likelihood of confusion case. And those two factors are separateness and distinctiveness between the third-party marks and the certification marks at issue. Now, separateness means the degree of relatedness between the nature of the goods or services upon which the certification mark and the trademarks are used. Distinctiveness refers to the degree of difference between the certification mark and the trademark that contain the same designation. And such that the different purpose of the certification mark can be gleaned by consumers. Now, here one applies not just an eyeball test but also an understanding of the meaning and commercial impression that the certification mark provides to consumers. And these two factors are related inversely. The lesser the separateness between the goods or services, the more distinct the differences must be between the certification mark and the trademark. Now, the case law shows that these two factors are a common thread that link the determination of whether a certification mark and a trademark are identical or substantially identical. The most relevant case is in Ramon Santo. There the board raises the test of separate and distinct for the first time. And in doing so it refers to three examples to illustrate separateness and distinctness. They talk about the trademarks for publication, good housekeeping and parents magazine. And compare it to those entities certification marks for non-publication goods using the certification mark approved by good housekeeping. What issue are you addressing here? Is it failure to police adequately? No, failure to police adequately would be 14.5A. 14.5C is the prohibition against permitting others to use one certification mark. It's another form of policing. It's a different form of policing, yes. But at least with the permissive use one has direct and adequate control over the members that one has granted that permission to. You haven't addressed the standard of review. The standard of review here is substantial evidence, right, on these fact questions? As to the factors of separateness and distinctiveness, but the standard for determining whether any of the marks are identical or substantially identical is a question of law and that is de novo, your honors. In the good housekeeping and parents magazine example. So you have, assuming that the test is near identity, I know you argue it's not. But assuming the test is near identity, you argue that the P-SWIS and LA-SWIS marks are nearly identical to the certification mark, correct? Correct, your honors. And so what is the law on this? Are there circumstances in which the PTO has found that the near identity test was satisfied and what are those? Yes, in Ramon Santo the near identity test was satisfied. The applicant had attended to obtain a certification mark registration for wear dated unconditionally guaranteed for one full year's normal wear and design. The design being just a simple circle. And that covered numerous clothing items and also pillows. It had already owned trademark registrations for pillows as well as for yarns and threads and other items of that sort. The trademark for wear dated for pillows was the term wear dated in a circle with a square above and a triangle below. Now the marks were different but they were, for the board's purposes, materially indistinct because the most pressing term in those two marks was wear dated. And given that, at least as to pillows, there was no separateness in the goods covered by the trademark and certification mark. We believe the board felt that the amount of difference between the certification mark and the trademark were insufficient. And that same type of reasoning. In Ramon Santo, didn't the board also take a look at, when it addressed separate and distinctness, didn't it also take a look at activities? At the activities that the parties were engaged in? Yes, there were two issues in Ramon Santo. The other was violation of 14.5D, the prohibition against discrimination. And that came up because some of the trademarks were used through related companies. And those related company trademarks were of slightly different, though related, products to the certification mark application. And so the analysis that the board in Ramon Santo used was applied to both sets of, both aspects of Line 14.5. But however, Ramon Santo was very clear. It laid down two bright line rules. It states that there must be a difference between the goods sold and the certification activity. Implying that if there is no difference at all, then the certification mark cannot stand. And, they go on to state, there must be a difference between the marks so used. So if the marks are wholly identical, as they were in the Florida Citrus case, then the certification mark can't stand either. In the present case, we have a situation where there is no difference between the goods covered by the certification mark and the trademarks. They are for watches. The registrations that the Federation owns are for watches and the components thereof. The uses by the permitted third parties, like La Suisse, Peace Suisse, Swiss Army, those are for watches. Without any separateness, the use of the identical designation should be fatal. But even if that bright line rule were not to exist, and one were just to determine, well, because the separateness is non-existent, we would need a lot of distinctiveness between the certification mark and the trademark. Well, it's not present either. Could you explain your argument that the certification requirements conflict with U.S. market requirements? Yes, Your Honor. In that argument, it is SWI's position that one's attempt to comply with FTC and customs regulations on marking requirements would lead one to conflict with the standards imposed by the Federation through their certification mark. For instance, this item was confidential, so some of it might conflict, but I'll speak in generalities. One can use, and the customs manuals indicate, one can use the abbreviation MOVT for movement when identifying that one's watch product contains Swiss movements. However, the Federation's own ordinance prohibits the use of that abbreviation MOVT. And so if a U.S. producer is selling commerce a mark that contains the certification mark Swiss MOVT, it would run into conflict with the Federation's certification mark users. And such a conflict did arise in one instance that was raised in the brief and is confidential in many parts regarding one of the applicant's own watches. You are coming to your rebuttal time, which you may save if you like. I would like to save. Mr. Peckhoff. Good morning, Your Honors. This Court's jurisprudence that's in Midwest Plastics Against Underwriters Laboratories establishes that the finding or the determination by the Trademark Trial and Appeal Board whether a certification mark meets the requirements of the Lanham Act is an issue of fact. Okay, but assuming that, it strikes me there's a bit of a problem here because under this permits provision, subsection C, you're not supposed to use the certification mark as a trademark or anything that's nearly identical to it as a trademark. And why aren't the marks P-SWIS and LA-SWIS nearly identical to the SWIS mark that's the certification mark? Okay, I'm glad you raised that, Your Honor. The question is whether there's substantial evidence supporting the Board's finding that what the statute says is you can't use the same mark for certification purposes and for trademark purposes. And you can't permit others to do the same, two different sections. Or something that's nearly identical. What? Or a mark that's nearly identical. Well, the statute only talks about using... It's always been construed. It's always been construed to be identical first in Ray, Florida and then virtually or substantially identical. Okay. So what is the substantial evidence that the Board relied upon to find that the marks are clearly not the same and are clearly different and clearly cannot be construed to be identical, virtually identical or substantially identical? Well, first is the marks themselves because they are clearly different. P-SWIS is not the same as SWIS or SWIS-MADE. But it can't be that any difference eliminates the problem because substantial identity is also a problem. Substantial identity suggests there must be some difference between the trademark and the certification mark. Right. And the Board found, and it's a finder of fact, that there was a substantial difference. And, in fact, the Board had plenty of evidence... Between P-SWIS and LAW-SWIS? Well, yes, Your Honor. There's a substantial difference. There is a substantial difference. They're not identical. In fact, the USPTO found that both... Of course they're not identical. The question is whether they're substantially... Well, they're not substantially identical, Your Honor. I mean, the most important point in looking at determining whether two marks are similar, and that's not the issue here. It's whether they're identical. It's looking at, A, how they begin. They begin with two different terms. B is what's the overall impression. LAW-SWIS is not the same and would not be construed to be the same as SWIS. And, in fact, it's a burden on the petitioner to show some evidence that somebody would review them the same. And that's their burden. And they put in no survey evidence. They have no evidence that anyone has ever thought LAW-SWIS or P-SWIS were the same. And, in fact, the Board found that they were substantially different. And the Trademark Office allowed those registrations, so they must have found that they were substantially different. And, in fact, the Federation opposed both the LAW-SWIS and the P-SWIS. No, no, no, no, no. They opposed it on the ground that they didn't comply with the certification requirements. Exactly, Your Honor. Which is not the same thing. Right. As I understand it, correct me if I'm wrong, but I understand that once these producers brought their watches into compliance with the certification requirements, they were allowed to use P-SWIS and LAW-SWIS. Right. And that's exactly my point, Your Honor, is that there is no way that the Federation would have allowed the use of the identical marks if it had any inkling that anybody thought that they were identical. I mean, the thing is that they've been protecting the certification marks for over 100 years, and they certainly wouldn't have jeopardized it if they had any inkling that those marks were substantially identical. And, in fact, the Board found that they clearly weren't substantially identical, and the burden is on the petitioners to show that the Board didn't have substantial evidence to support its decision. And, in fact, it didn't. What they do do is that they come back and say, no, no, no, there's a new standard, the separate and distinct standard. But if you look at Monsanto and you look at the in-ray open cases, there's absolutely no new standard. Monsanto specifically says that separate and distinct only means that a mark is not identical, substantially identical, or virtually identical. There is no different standard. It's completely made up. Addressing their issue of the supposed conflict between customs regulations and the SWIS certification standards, incidentally, counsel referred to FTC regulations, and there haven't been any pertinent FTC regulations since 1999. So that's a complete non-issue. What the Board found, relying on the authority of this Court, is that the differences between regulations by other agencies and the requirements of certification marks are really not at issue in this case. As this Board found in the Vintner's case, or held in the Vintner's case, the only issue in an inter-parties proceeding, in a cancellation proceeding, is whether a mark is registrable, i.e., does the mark satisfy all the conditions of registration. It is not an issue as to whether or not the certification standards are exactly the same as some regulatory agency's standards. In fact, that isn't what the statutory scheme is at all. The statutory scheme that the Lanham Act sets out for certification marks is that the certifier determines what those standards are. A certification mark on a watch doesn't indicate that it satisfies customs requirements for geographical classification. What that certification mark indicates is that it satisfies the standards of the certifier, of the registrant, and that's precisely what they do. There is absolutely no conflict. Customs has a different purpose for its geographical classifications than does the Lanham Act. The Lanham Act, the certification marks... Let me bring you back for a moment to the substantial identity question. Yes, Your Honor. If P. Suisse and La Suisse are not substantially identical, give me an example of a trademark which is not identical but would be substantially identical when something were added to it. Okay. If you spelled Suisse, S-W-I-Z-S, I would say that that was substantially identical and would create the same commercial impression as Swiss. If you spell Suisse correctly, it's not substantially identical. If you spell it incorrectly, it's... No, Your Honor. I think that if Suisse had a variation, if we were talking about Suisse versus Suisse, then clearly those things would be identical marks. I think what you're asking, Judge Dike, is that if there is a slight variation, could there be a slight variation being substantially identical and not identical? Suppose it were called the Suisse. The Suisse? Yeah. I don't know. I mean, the thing is that I would say no because it's a different mark and it would create a different commercial... You say that wouldn't be substantially identical. No, Your Honor. Is La Suisse the Suisse? Well, it could be translated as the Suisse, but let me point out that the only... was a confusing similarity case. It was not a substantially identical case. And, in fact, you can register La Yogurt even though yogurt itself is generic. So, clearly, there is a substantial difference between... Well, it doesn't have to be substantial. These things are separate and distinct. As the board said, they're clearly different and clearly are not virtually or substantially identical. Did they address the P. Suisse and La Suisse specifically? They did not refer to those marks in its decision, but they certainly were brought up and they were the subject of briefing beforehand, Your Honor. If Your Honors don't have any other questions... No one ever gets penalized for not using all their time. Thank you, Your Honor. Mr. Rodriguez has almost three minutes of rebuttal. Thank you, Your Honors. May it please the Court. Now, the Federation would have this Court believe that it is our burden to show that, with substantially more evidence that was already provided at trial, that the public views as confusing the terms P. Suisse and La Suisse with their certification mark Suisse. Such requirements have never been held to be needed by the board in any of the cases previously rendering this issue of separate and distinctiveness. What the board has simply done previously is taken a look at the marks as registered and taking the marks as registered and knowing that they are valid marks and possibly conflicting marks in the marketplace is enough to base the comparative analysis and to find that, yes, these marks are identical, substantially virtually identical. And to do so simply requires the use of separate and distinctiveness tests. The facts in the case are undisputed, Your Honors. The third party Suisse formative marks are used by express and in a few instances implied permission by the Federation. And the Federation's registrations are for watches. P. Suisse, La Suisse are for watches. These permitted third party trademark uses incorporating the term Suisse are simply not separate or distinct from the certification marks at issue as required by the case law. The lack of any separateness requires either extreme distinctiveness in the trademark usage or may very well, as the Bright Line rule, prohibit the existence of certification marks. In applying the separate and distinctiveness test, Your Honors, the court can come to only one conclusion, that several of the permitted third party Suisse formative marks are simply not separate and distinct enough from the Federation's certification marks and that the cancellation of the registrations is the only logical result. Now, as to the different markings required by the Federation and by customs law, I would like to point out that the standards submitted by the Federation with the Patent and Trademark Office do not include any requirement for the use of movement or the abbreviations for movement. They are simply for the use of the term Suisse, abbreviated in those standards. Entities that use the term Suisse MOVT should not be prejudiced by not being allowed to obtain a license to use a certification mark, but the Federation has done just that, despite no requirement in the standards as to the term movement. Thank you, Mr. Rodriguez. We'll take the case under advisement.